UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WAYNE SMITH,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Case No.: 1:14-cv-01210-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

### **INTRODUCTION**

Plaintiff Anthony Wayne Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act and his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

**FACTS AND PRIOR PROCEEDINGS**

On May 31, 2011, Plaintiff filed an application for disability insurance benefits and supplemental security income. AR 158-172.[1] Plaintiff alleged that he became disabled on September 2, 2008, due complications from valley fever, asthma, fibromyalgia, hearing problems, cervical neck problems and a history of head injury. AR 100-08, 114, 158. Plaintiff's applications were denied initially and on reconsideration. AR 100-08, 114-118. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Cusker held a hearing on December 19, 2012, and issued an order denying benefits on May 17, 2013. AR 22-37. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1- 4, 8-21. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on December 19, 2012, in Fresno, California. AR 43-69. Plaintiff appeared and testified. He was represented by attorney Gina Fazio. AR 45. Impartial Vocational Expert ("VE") Thomas Dachelet also testified. AR 45, 63.

At age 53, Plaintiff was 5'11" and weighed 275 pounds. He was divorced. AR 47.

In response to questioning from the ALJ, Plaintiff testified that he attended three years of college and had a certificate for commercial truck driving, pharmacy technician and dental assistant. Plaintiff was a pharmacy technician in the Air Force, and was discharged from the Air Force in 1988. His last job, in September 2008, was as a truck driver. In the last 15 years, he also worked in manufacturing as a weaver in a textile mill and a forklift operator. AR 47-48.

Plaintiff alleged that he had been unable to work since September 2, 2008. He testified that he had not done any work since that time. When questioned about traveling, Plaintiff testified that his daughter died and he flew to South Carolina. While there in July 2012, he traveled to the VA hospital in Georgia, which was approximately an hour away from South Carolina. AR 49-50.

Plaintiff testified that his memory limits his ability to work. He was told that he was struck in the head twice in 2010. He also has an issue standing. He was a truck driver, but cannot hold a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

steering wheel. The left side of his body goes numb and he cannot turn his head on a regular basis. He had to learn to turn his body rather than his head due to a spinal injury. Plaintiff reported that he is on pain medications – morphine, Percocet and Lyrica. AR 50.

In response to questions about his treatment, Plaintiff testified that he receives all his treatment from the VA, including medication and physical therapy. He also is receiving mental health treatment. He was receiving counseling weekly, but his therapist took a job in Las Vegas, so he no longer has weekly therapy. AR 51.

Plaintiff admitted that he used to have problem with illegal drugs. He last used illegal drugs in 2010. He was using cocaine. Plaintiff denied that it was treatment for drug abuse that caused him to stop working. AR 51-52.

When asked about his pain management treatment, Plaintiff testified that it was hard to say whether it was helpful. He indicated it was better than nothing and he was waiting on a consult to see a surgeon in San Francisco. When asked why he needed surgery, Plaintiff testified that they did not know the full extent of his spinal injuries. He has had a number of MRIs and injections. His neuro-psychiatrist wants him to see a neurosurgeon in San Francisco because the injections have not helped. AR 52.

When asked about volunteering or ministering, Plaintiff testified that he does Bible studies with people over the phone. He came to California in September and has been in pain the majority of time, so he has not done any ministering other than on the phone. Prior to September, he had been doing ministering. AR 52-53.

When asked about his request for federal debt relief, Plaintiff testified that he has student loans. He attended Fresno Pacific in 2010-2011, majoring in Christian ministry. He does not remember the classes he had. He could not do the work or retain anything. He would study, go to class, and take notes, but would not know what the professor was talking about. He would be totally lost, like he was in a different world. Prior being struck in the head, school was always easy for him. AR 53.

In response to questions about his physical abilities, Plaintiff testified that he can tolerate being on his feet an hour or less. He uses a four-wheel walker, which was prescribed a week before the

1  hearing.  Before that he was using a walking cane.  Plaintiff also testified that he has problems using
2  his hands because they burn a lot and they are not as strong as they used to be.  Although he has some
3  problems holding onto a steering wheel, he can drive.  He cannot lift anything over ten pounds and
4  cannot sit for two hours at time.  AR 54-55.

5  When questioned about his memory problems and being hit in the head, Plaintiff testified that
6  he went to South Carolina for his daughter's wedding where his brother and another guy got into a
7  physical fight.  Plaintiff was hospitalized at South Regional Hospital in Greenwood, South Carolina.
8  AR 55.

9  Plaintiff testified that he currently lives alone.  He has a girlfriend that lived in Southern
10 California.  He would stay with her two weeks out of the month, taking the train to Southern
11 California, which took 5-6 hours and included a bus ride.  AR 55-56.

12 In response to questions about his daily activities, Plaintiff testified that he can dress and bathe
13 himself, prepare his own meals, do his own laundry, wash dishes and vacuum his floors.  He shops by
14 himself the majority of time, but if he is in Southern California, then he shops with his girlfriend.  He
15 likes to read his Bible and help with Bible study on the telephone.  He used to minister once a month
16 at a church and occasionally would do street preaching and hand out tracts.  He last did that in the
17 early spring.  AR 56-57.

18 In response to questioning by his counsel, Plaintiff testified that he would do street preaching
19 once every 2-3 months.  He would go out and talk to people that he knew, like at bus stops.  When he
20 ministered at the church, he would preach and teach about once a month.  AR 58.

21 Plaintiff also testified that he was going to group therapy for speech and memory.  Since the
22 brain injury, he slurs and his speech pattern changed.  The VA has a program to help with memory and
23 speech pattern.  He does exercises to get his memory back and they give him techniques, like writing
24 notes. Plaintiff testified that he gets up at 2 or 3 in the morning and prays.  He has an issue with time
25 management, and even thought he was up at 2:00, he still did not arrive at the hearing until slightly
26 after 9:00.  AR 58-59.

27
28

In response to questions about transportation, Plaintiff testified that he gets around by bus. The last time he drove was the early part of the year. He would drive to Madera to attend church. Driving takes a lot out of him because it is an issue for him to turn his head from side-to-side and grip the steering wheel. Plaintiff's commercial license is still valid. AR 59-60.

Plaintiff also testified about his medications. He reported side effects, including fatigue, drowsiness, dry mouth and dizziness. The dizziness lasts a few seconds and he has learned to cope with it. AR 60.

In response to questions about his drug use, Plaintiff testified that he used it one time in 2010. He was injured and someone gave him cocaine. He used to smoke crack cocaine. It was not a daily thing, but he would binge. AR 61. Plaintiff testified that he was not using morphine and Percocet when he was driving a truck. He is taking a lot of narcotics. This month he is taking methadone, which he has been on for two or three months. They have been switching back and forth because he cannot tolerate them. He does not like the feeling from morphine. AR 61-62.

In response to questions about his abilities, Plaintiff testified that he has a problem standing because of his feet and knees. He has arthritis in both feet, but the right is worse and swells frequently. He has to lie down during the day for a few hours. He lies on the couch quite regularly, but makes himself get up. He is in pain, but makes himself do things. During the day, he watches television and cries a lot. He no longer attends church every Sunday, going only once a month when he is in Southern California. AR 62-63.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Thomas Dachelet. AR 63. The VE initially questioned Plaintiff about his past work in textiles. Plaintiff testified that it took him a few months to learn the job. He testified that if they hired a person off the street, they would be in training 2-3 months before they could do the job. Plaintiff did not have to lift anything; he was weaving cloth, tying thread together. He also used a forklift as part of the job. AR 64-65. The VE testified that Plaintiff's past work was classified as truck driver and textile worker. AR 65.

The ALJ also asked the VE hypothetical questions, contemplating an individual of Plaintiff's age education and work experience. For the first hypothetical, the ALJ asked the VE to assume an

individual who could lift/carry 20 pounds occasionally, 10 frequently, could sit/stand/walk six hours in an eight-hour workday with normal breaks, could push/pull without limitation except as indicated for lifting/carrying, could frequently perform all postural activities, had no manipulative, visual or communicative limitations, but must avoid concentrated exposure to extreme cold and heat, fumes, odors, dust, gases, and poor ventilation, could perform simple and some, but not all, complex tasks, could relate to others on a superficial work basis and could adapt to work situations. The VE testified that such an individual could not perform Plaintiff's past work, but there were other jobs in the national economy, such as packing line worker, garment sorter, and ampule filler. AR 65-66.

For the second hypothetical, the ALJ asked the VE to assume the same mental and vocational factors, maximum sit/stand/walk six hours in an eight-hour workday with normal breaks, did not require an assistive device, maximum lift/carry 20 pounds occasionally, 20 frequently, could frequently climb, balance, stoop, kneel, crouch, crawl, reach, handle finger and feel, but was precluded from working around temperature extremes, fumes, dust and gasses. The VE testified that this individual could do the jobs identified in response to the first hypothetical. AR 66-67. In response to questioning from Plaintiff's counsel, the VE testified that there would not be any reduction in the number of jobs offered due to the limitation of frequent reaching and handling. AR 67.

For the third hypothetical, the ALJ asked the VE to assume an individual the same age, education and work experience as Plaintiff, but was not able to stand for two hours at a time because of pain. The VE testified that there would not be any jobs in the national economy that such a person could perform. AR 67.

**Medical Record**

The entire medical record was reviewed by the Court. AR 231-1773. The relevant mental health evidence, summarized here, will be referenced below as necessary to this Court's decision.

On March 8, 2010, Plaintiff complained of blunt trauma to the right frontal area of his head on February 18 with a baseball bat. Plaintiff's labs were positive for cocaine. AR 522-26. A CT scan showed no significant change in the overall appearance of the brain CT since the prior CT acquired on September 29, 2009. AR 1191.

On March 11, 2010, Plaintiff saw Dr. Tin Tin Kyaw on follow-up from the emergency room. Plaintiff complained of a mild headache, right-eye photosensitivity and ringing in his ear. Plaintiff said he was on Vicodin/Percocet/morphine for pain and was not himself. He was given drugs by friends without knowing it and his urine was positive for cocaine. On examination, Plaintiff was awake, alert and oriented. AR 516-18.

On April 9, 2010, Plaintiff sought treatment from Dr. Tin Tin Kyaw for complaints of blurry vision in his right eye. Plaintiff reported that he did not feel right since his head trauma, with poor concentration, memory loss and ringing in the right ear. He denied depression. On examination, Plaintiff was awake, alert and oriented and in no acute distress. Although Plaintiff had normal neurological findings, Dr. Kyaw referred Plaintiff for a neuropsych appointment to evaluate his memory loss and a MRI of his brain to rule out lesions. AR 508-510.

On April 16, 2010, a brain MRI showed no significant foci of abnormal signal and no foci of restricted diffusion. The vascular flow voids were present and unremarkable. There was fluid in scattered left and right mastoid air cells more numerous on the left. AR 1180-11.

On April 21, 2010, Plaintiff saw Dr. Tin Tin Kyaw for his radiology report. Plaintiff complained of not feeling right, with memory issues, along with tiredness and pain. Dr. Kyaw indicated that Plaintiff had very vague symptoms and chronic generalized pain with no gross neurological deficit. Following completion of blood work and brain imaging, Dr. Kyaw opined that Plaintiff's symptoms were suggestive of fibromyalgia and depression, but Plaintiff denied depression and refused to take an antidepressant. Plaintiff was referred to Dr. Raroque for depression. AR 500-503.

On April 21, 2010, Plaintiff saw Dr. Roy Raroque, a staff psychiatrist. On mental status examination, Plaintiff's affectual display was mildly constricted in range. His replies were spontaneous, coherent, and relevant and his thought processes were linear and goal-directed. Plaintiff was referred for psychotherapy, but not psychotropic medication. AR 497-99.

On May 3, 2010, Plaintiff underwent a neuropsychological evaluation completed by Dr. Matthew A. Battista, a clinical neuropsychologist. Plaintiff reported noticing changes in his cognitive functioning following a blow to the head with a blunt object in February 2010. Plaintiff recalled the

7

events leading up to the event, but did not clearly recall subsequent events. Plaintiff also reported ringing in his ears. As examples of cognitive changes, Plaintiff mentioned forgetting to return calls and forgetting appointments. Plaintiff denied felling depressed. Dr. Battista observed that Plaintiff was alert, oriented and cooperative. His speech, auditory comprehension and social demeanor were within normal limits. His mood was euthymic with congruent affect. There were no signs of psychotic process. On testing, Plaintiff had mild deficits in mental control and psychomotor speed when matching digits to symbols. His spatial spans were markedly below expectation. Plaintiff's evaluation revealed grossly intact cognitive functioning with circumscribed decrements on measures of spatial attention, processing speed and mental control. Memory tasks revealed a consistent pattern of frank memory deficit. Dr. Battista noted that because there was no baseline, Plaintiff's profile was not entirely reliable. However, Dr. Battista opined that the obtained decrements on cognitive testing were consistent with what is often seen in cases of mild head injury/post-concussion. Dr. Battista concluded that there did not appear to be any current psychiatric disorder and he diagnosed Plaintiff with cognitive disorder NOS. AR 892-94.

On May 24, 2010, Plaintiff was seen in neurology by Dr. Jeffrey S. Mogelof for evaluation of the head injury sustained February. Plaintiff reported being in South Carolina for his daughter's wedding. He intervened in an argument and got hit on the right side of the head. He was taken to the hospital and admitted for three days with a diagnosis of contre coup injury and traumatic subarachnoid hemorrhage. Since returning to California, Plaintiff had improved a little and his newer scans showed resorption of the blood. Plaintiff complained about headaches and some trouble thinking. He had been given vicodin for headaches. On examination, Plaintiff had normal mentation and was a good historian. His cranial nerves were normal, no pronator drift, he had excellent gait station and reflexes. Dr. Mogelef indicated Plaintiff was gradually improving and he expected symptoms to gradually abate over time. AR 882-83.

On June 9, 2010, Dr. Hani R. Khouzam, psychiatrist, completed a General Relief form. He indicated that Plaintiff was still unable to work due to many medical conditions including headache, fibromyalgia, neck pain and head injury. AR 868.

On June 22, 2010, Plaintiff saw Dr. Kyaw to get his disability form filled out.  Dr. Kyaw planned to fill out a temporary disability form.  AR 854-56.

On June 24, 2010, Plaintiff met with Ms. Yanez, a social worker, and expressed frustration about a disability form recently completed in the primary care clinic.  AR 852-53.  On June 25, 2010, Ms. Yanez informed Plaintiff that the primary care provider would not redo the form.  AR 853.

On August 16, 2010, Dr. M. G. Hematillake saw Plaintiff for complaints of headaches, forgetfulness, and neck pain.  Plaintiff reported that he has some trouble thinking.  He had a court appearance related to his injury and did not wish to travel out of state until his condition improved.  Dr. Hematillake wrote a letter to recommend limits on Plaintiff's travel, driving long distance or night time, until Plaintiff's brain injury related symptoms were reevaluated.  AR 834-36.

On September 2, 2010, Dr. Gopi Kasturi, a physiatrist, completed a polytrauma consult related to Plaintiff's head injury.  Plaintiff reported that he was hit on the head with a bat twice in February 2010.  He denied losing consciousness, but subsequent events were unclear.  Plaintiff was taken to a hospital and informed that he had a bleed in his head and a skull fracture.  He had been evaluated by Neuropsychology and found to have non-specific memory deficits.  Plaintiff complained of headaches, ringing in his ear, and memory problems.  Dr. Kasturi indicated that Plaintiff had a history of traumatic brain injury and behavioral health issues.  Based on history, Dr. Kasturi indicated that plaintiff had a mild-moderate traumatic brain injury ("TBI") in February and continued to have symptoms that could be attributed to a combination of TBI and behavioral health issues.  Plaintiff was referred to audiology and speech and language therapy.  AR 825-28.

On September 9, 2010, Plaintiff underwent a memory evaluation by a speech pathologist following referral.  Plaintiff complained of memory and word-finding deficits that interfered with his activities of daily living.  On evaluation, Plaintiff demonstrated some difficulty with immediate memory in repeating words and sequencing given directions.  He was delayed in answering some questions regarding orientation and organization.  He needed minimal clarification repetition to answer questions appropriately.  Plaintiff also reported difficulties remembering new information and appointments as well as implementing new activities into his daily routine.  Plaintiff agreed to speech therapy to improve memory, word finding and executive function deficits.  AR 824-25.

On September 13, 2010, Plaintiff underwent an initial mental health intake evaluation with Diane L. Elble RN, a psychiatric case manager. Plaintiff complained of history of depression. He also complained that his injury affected his thought process. On evaluation, his affect was blunted and his mood angry. His thought processes were goal directed, but his attention and concentration were poor. Plaintiff was diagnosed with cocaine in full, sustained remission and depression. AR 816-22.

On the same date, Plaintiff met with Dr. Avak Howsepian, a clinical psychiatrist. On mental status exam, Plaintiff's affect was constricted, appropriate. He had no disorganization and his cognition was grossly intact. Plaintiff planned to begin Fresno Pacific University to study Christian Ministry. Plaintiff had a history of traumatic brain disorder, cognitive disorder NOS history. Plaintiff had substantially improved cognition since the time of the injury. Plaintiff also had a depressive disorder NOS: dysthymia v. substance and adjustment components. AR 815-16.

On September 27, 2010, Plaintiff met with Dr. Papazian, a clinical psychologist. Plaintiff reported being moderately depressed. He also had problems of attention, concentration and memory after being hit in the head. He also reported difficulty staying alert in class. Plaintiff was attending Fresno Pacific University and trying to major in Christian Ministries. Dr. Papazian intended to meet with Plaintiff to address issues contributing to and maintaining his depressive and anxiety symptoms. AR 812-13.

On October 29, 2010, Plaintiff informed Dr. Papazian that he was attending Fresno Pacific University and trying to complete a Christian Ministries program. Plaintiff reported difficulty of attention, concentration and short term memory. He also stated that he gets irritable, angry and depressed and has difficulty staying alert in class. Dr. Papazian found Plaintiff to be moderately depressed, irritable and angry. Plaintiff declined medication, but agreed to supportive therapy to help mitigate symptoms of depression, anxiety and anger. AR 802.

On December 17, 2010, Plaintiff told Dr. Papazian that he had to withdraw from his classes at Fresno Pacific University due to severe chest congestion. AR 764.

On February 4, 2011, Plaintiff met with Dr. Papazian. Plaintiff was in a good mood and stated that his health was getting better. Plaintiff expressed frustration and stress over an experience with his academic advisor at Fresno Pacific University. Plaintiff related that the advisor forgot to develop

Plaintiff's academic schedule on time, which delayed Plaintiff's receipt of financial aid. Plaintiff presented no prominent symptoms of depression or anxiety. Plaintiff was assessed with depressive disorder NOS and cognitive disorder NOS (history of traumatic brain injury). AR 739.

On August 9, 2011, Deborah Hartley, PhD, a state agency consultant, completed a Psychiatric Review Technique form. Plaintiff had a cognitive disorder, depression/psychosis NOS, and polysubstance abuse and alcohol. Dr. Hartley opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and one or two episodes of decompensation, each of extended duration. Dr. Hartley believed Plaintiff retained the capacity to care for himself, go into his community for services, handle finances and interact on a limited basis with others. AR 1224-37.

Dr. Hartley also completed a Mental Residual Functional Capacity Assessment form. Dr. Hartley opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods and to interact appropriately with the general public. Additionally, Dr. Hartley concluded that Plaintiff could perform simple and some, but not all, complex tasks, could relate to others on a superficial work basis and could adapt to a work situation. AR 1238-40.

On September 29, 2011, Plaintiff reported to Ms. Yanez that he did not enroll in school for the semester due to fatigue and inability to maintain passing grades. AR 1493.

On November 30, 2011, Plaintiff saw Remy Sanchez, a speech pathologist. Plaintiff reported that he had increased memory and word finding deficits that interfered with his activities of daily living. Plaintiff demonstrated some difficulty with immediate memory in repeating words and sequencing given directions. Plaintiff also identified difficulties remembering new information and appointments. Plaintiff reported that these deficits have impacted his ability to be successful at school and he opted to discontinue classes. The speech therapist recommended speech therapy once per week to improve memory, word finding and executive function deficits. AR 1457-59.

On December 16, 2011, Plaintiff reported to Ms. Yanez that he did not plan to return to school. He took a semester off due to health issues and still did not feel he could complete coursework. AR 1455.

On December 27, 2011, Dr. Battista opined that having reviewed the medical record since the last neuropsychology evaluation in 2010, there was no further indication for a repeat neuropsychology evaluation. AR 1384-85.

On April 11, 2012, Dr. James P. Murphy, a clinical psychologist, completed a consultative psychological evaluation. Plaintiff stated he was unable to work due to complications from Valley Fever, Asthma, Fibromyalgia, hearing problems, neck pain and a history of a head injury. On mental status examination, Plaintiff's attention was within normal limits and he was oriented to person, place, time and purpose. His memory appeared to be intact for short term and remote recall. Plaintiff's thoughts were clear, coherent, well organized, goal directed and relevant. He was able to handle ideas well, and could identify basic similarities, differences and absurdities. His general fund of knowledge was adequate. On the Bender Visual Motor Gestalt Test II, which detects disturbances of perception and short term memory, Plaintiff's performance was in the average range. On the Wechsler Adult Intelligence Scale, IV Edition, which represents general intellectual functioning, Plaintiff scored at the low average level of intelligence. On the Wechsler Memory Scale, IV Edition, Plaintiff's scales were mostly in the Severely Impaired Range. Dr. Murphy opined that Plaintiff did not have restrictions concerning daily activities or maintaining social functioning. Plaintiff did not appear to have problems with concentration, persistence or pace that could jeopardize his ability to work. Dr. Murphy further opined that Plaintiff would not experience episodes of emotional deterioration in work like situations. He had no difficulty understanding, carrying out and remembering simple instructions. Dr. Murphy believed Plaintiff would not have difficulty responding appropriately to co-workers, supervisors, and the public. He also would not have difficulty responding to usual work situations or dealing appropriately with changes in routine work setting. Dr. Murphy believed that Plaintiff's most difficult barrier to overcome if he were to reenter the workforce would be his desire not work, alcohol dependence, and his possible polysubstance dependence. Dr. Murphy believed Plaintiff was capable of performing Simple Repetitive Tasks and complex tasks on a regular basis. Dr. Murphy also indicated that Plaintiff did not have difficulty handling everyday activities of daily living. Plaintiff understood what was asked of him and did not demonstrate any difficulties understanding the simple instructions of the various tasks. Plaintiff appeared to understand and follow simple, basic instruction

without difficulty. He was able to sit for over two hours without a break and did not complain of physical or mental discomfort. AR 1609-13. Dr. Murphy also completed a Medical Source – Vendor Questions form in which he opined that Plaintiff was capable of handling funds in his best interests. AR 1614.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 22-37. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 2, 2008, his alleged onset date. AR 27. Further, the ALJ identified cervical spine spondylosis, arthralgias, history of drug and alcohol dependence, history of traumatic brain injury, history of Valley Fever in 1988, reactive airway disease and obesity as severe impairments. AR 27. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 27-29. Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. He frequently could perform all postural activities and had no manipulative, visual or communicative limitations, but must avoid concentrated exposure to extreme cold, extreme heat, and fumes, odors, dusts, gases, and poor ventilation. The ALJ also determined that Plaintiff could perform simple, and some, but not all, complex tasks, could relate to others on a superficial work basis and could adapt to a work situation. AR 29-35. The ALJ found that Plaintiff could not perform any of his past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 35-37. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 37.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

13

402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[2]

Plaintiff first argues that the ALJ erred when he found that Plaintiff had limitations of concentration, persistence and pace, but failed to incorporate these limitations into his hypotheticals and RFC finding. (Doc.15 at 2-3).

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

At step three of the sequential evaluation, the ALJ found Plaintiff had "moderate difficulties" in concentration, persistence or pace." AR 28. At step four, the ALJ found that Plaintiff had the mental residual functional capacity to "perform simple, and some, but not all, complex tasks." AR 29. Plaintiff contends that the ALJ erred because the mental RFC did not capture the deficiencies in concentration, persistence, and pace.

The issue here is whether the ALJ's RFC assessment, which limits Plaintiff to "simple, and some, but not all complex tasks," sufficiently translates the step three finding of moderate difficulties in concentration, persistence, and pace into functional limitations. The Court initially notes that the limitations identified at step three are not an RFC assessment. *SSR 96-8P*, 1996 WL 374184, at *4 (July 2, 1996). Further, the Court finds that the ALJ properly accounted for any difficulties in concentration, persistence, and pace in the RFC by limitation of Plaintiff to simple, and some, but not all, complex tasks. According to the relevant opinion evidence, in August 2011, Dr. Hartley found that Plaintiff had moderate difficulties in maintaining concentration, persistence and pace and moderate limitations in the ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods and to interact appropriately with the general public. Having noted the limitations in concentration, persistence, and pace, however, Dr. Hartley concluded that Plaintiff could perform simple and some, but not all, complex tasks. AR 1224-40.

In April 2012, Dr. Murphy, a consultative examiner, found Plaintiff's attention to be within normal limits and his memory intact for short term and remote recall. Plaintiff's thoughts were clear, coherent, well organized, goal directed and relevant. Although Plaintiff's Wechsler Memory Scales were mostly in the Severely Impaired Range, Plaintiff's performance was in the average range on the Bender Visual Motor Gestalt Test II, which detects disturbances of perception and short term memory. Following mental status examination and testing, Dr. Murphy opined that Plaintiff did not appear to have problems with concentration, persistence or pace that could jeopardize his ability to work. Dr. Murphy believed Plaintiff was capable of performing Simple Repetitive Tasks and complex tasks on a regular basis. Dr. Murphy opined that Plaintiff understood what was asked of him and did not demonstrate any difficulties understanding the simple instructions of the various tasks. AR 1609-13.

To establish Plaintiff's mental RFC, the ALJ accorded great weight to the opinion of Dr. Hartley, noting that it was consistent with the other source opinions, including that of Dr. Murphy, and consistent with the medical evidence. AR 34. It is therefore evident from the record that the ALJ translated Plaintiff's condition, including limitations in concentration, persistence, and pace, into the only concrete restrictions available to him. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). There are no other medical opinions in the record demonstrating that Plaintiff could not perform simple tasks in light of his moderate difficulties in concentration, persistence and pace. Therefore, consistent with the medical evidence, the ALJ appropriately accounted for Plaintiff's moderation limitations by limiting him to simple, and some, but not all complex tasks. "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.*, *citing Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) and *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *see also O'Neil v. Colvin*, No. 1:14-cv-00432-BAM, 2015 WL 5604318, at *14 (E.D. Cal. Sept. 23, 2015) (ALJ appropriately accounted for moderate limitations in concentration and attention by limiting Plaintiff to simple, routine and repetitive tasks).

Plaintiff next argues that the medical record warrants greater limitations resulting from the memory deficits caused by his traumatic brain injury. In this instance, however, the Court finds that the ALJ reasonably relied on the medical expertise of Drs. Hartley and Murphy related to the functional capacity of Plaintiff in light of any memory deficits. As noted by the ALJ, Dr. Hartley found Plaintiff had moderate limitations in the ability to remember detailed instructions, not simple instructions. AR 33, 1238. In a similar fashion, the ALJ relied on the consistent findings of Dr. Murphy, who found Plaintiff had "no difficulty . . . remembering simple instructions." AR 34, 1612. As an examining physician, Dr. Murphy's opinion alone constitutes substantial evidence as it was based on his independent clinical evaluation. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence where it rests on physician's own independent examination of the claimant).

Plaintiff also argues that the ALJ's mental RFC is impermissibly vague because it was unclear what the ALJ meant by "some, but not all, complex tasks." (Doc. 15 at 5). Even assuming the ALJ's

addition of "some" complex tasks is erroneously phrased, such error is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where mistake was non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion). The RFC finding is primarily a limitation to simple tasks. Such a limitation is not inconsistent with the ALJ's conclusion that Plaintiff can perform unskilled jobs having a SVP of 2. AR 36-37; *see Olson v. Colvin*, No. 2:13-cv-1038 AC, 2014 WL 1513346, at *5 (E.D. Cal. Apr. 11, 2014) (limitation to simple instructions not inconsistent with the ALJ's conclusion that plaintiff could perform jobs having a SVP of 2); *Hongdo Thi Do v. Colvin*, No. 2:12-cv-01679-AC, 2013 WL 4519625, at *10 (E.D. Cal. Aug. 26, 2013) (mental demands of past work with SVP 2 within RFC limiting plaintiff to simple, repetitive tasks). The Court therefore finds that the addition of "some" complex tasks is irrelevant to the ALJ's ultimate disability conclusion.

Plaintiff's remaining argument that the ALJ failed to incorporate Plaintiff's mental limitations into his hypotheticals lacks merit. For the reasons discussed above, the ALJ appropriately incorporated Plaintiff's mental limitations in the RFC by finding that he could perform simple and some, but not all, complex tasks. According to the record, in first two hypotheticals, the vocational expert was asked to assume an individual who could perform simple and some, but not all, complex tasks. AR 65-67. Thus, the ALJ properly included the mental RFC limitations in the hypotheticals.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Anthony Wayne Smith.

IT IS SO ORDERED.

Dated: **March 1, 2016**          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE